## Equitable Life Assurance Society of the United States v. Skaggs.

(Decided Feb. 7, 1936.)

536

WILLIAM MARSHALL BULLITT and EUGENE B. COCHRAN for appellant.

KIRK & WELLS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

For a long time prior to December 2, 1930, the appellee and plaintiff below, Amos Skaggs, was an employee of the Consolidated Coal Company at its mining operations in Van Lear, Johnson county, Ky. On that day he was discharged, but prior thereto, and on June 1, 1929, the appellant and defendant below, the Equitable Life Asurance Society of the United States, issued its group policy No. 3028 to the Consolidated Coal Company, insuring the lives of certain of its employees (including plaintiff) and conferring upon them certain other benefits. Individual certificates were at the same time or later issued to each employee covered by the group policy, including plaintiff. One of the benefits conferred by such contracts, in addition to that of death benefit, was this: "In the event that any employee while insured under the aforesaid policy and before attaining age 60 becomes totally and permanently disabled by bodily injury or disease and will thereby presumably be continuously prevented for life from engaging in any occupation or performing any work for compensation of financial value, upon receipt of due proof of such disability before the expiration of one year from the date of its commencement, the Society will, in termination of all insurance of such employee under the policy, pay equal monthly disability-installments. * * *" The amount that would be due plaintiff under the certificate issued to him by virtue of that clause, if the contingency should arise, was "40 monthly instalments of $52.50 each in lieu of the death benefit, if Skaggs became "totally and presumably permanently" disabled while employed.

Following plaintiff's discharge (which annulled the policy), he claims to have previously become afflicted with some heart affection that substantially disabled him totally and permanently, although he continued to work thereafter until he was discharged, as he also did in performing other work thereafter. But about 6 months after his discharge Dr. Picklesimer, one of the physicians in the Golden Rule Hospital in Johnson county, examined him and found his heart condition to be abnormal (description of which was given by the physician) and that the patient was suffering from other afflictions contributing to his physical decline. However, nothing was said or done with reference thereto to defendant, the obligor in the insurance policy and certificate. Matters continued with plaintiff occasionally consulting a physician until September 23, 1932 (1 year, 9 months, and 21 days after plaintiff was discharged by his employer, and more than that time from the date when his alleged disability commenced), when he mailed to defendant proof of his alleged disability, a part of which consisted in written statements from Drs. J. A. Wells, W. R. Castle, and F. M. Picklesimer, and it is stipulated in writing filed as a part of the record of this case that no other effort was made towards furnishing proof as required by the inserted provision of the insurance contract supra than the one attempted to be made at that time.

Defendant declined to make payment pursuant to that request, followed by plaintiff filing this action against it in the Johnson circuit court on March 27, 1933, by which he sought to recover of it $2,150, the amount of the monthly disability payments for the entire period of 40 months. The answer denied liability, and controverted all of the material facts entitling plaintiff to recover as was averred in his petition, and upon trial, under the instructions given by the court, the jury returned a verdict for the full amount claimed. Defendant's motion for a new trial was overruled, and from that order and the judgment pronounced on the verdict it prosecutes this appeal. A number of designated errors are argued in briefs of defendant's counsel as grounds for reversal, among which is that no proof or attempted proof of such disability was filed, or offered to be filed, within "one year from the date of its commencement," as is expressly required

in the obligation of the insurance contracts upon which the action is based. Some of the other alleged errors we think are sufficiently meritorious to authorize a reversal of the judgment, but, since the one referred to is unmistakably sufficient for that purpose, we will refrain from discussing any of the others and pass them without further comment.

In the recent case of Metropolitan Life Insurance Co. v. Nusz, 261 Ky. 281, 87 S. W. (2d) 607, we held that (quoting from the syllabus): "Where policy makes giving of notice or furnishing proof of loss a condition precedent to liability or provides for forfeiture if notice or proof of loss are not given within time specified, notice of proof of loss must be furnished within time specified, unless insurer "waives requirement, or is estopped from relying on failure to so furnish notice or proof of loss." The proof was not furnished within the specified time in that case nor was any waiver or estoppel available to plaintiff therein, and we reversed the judgment that he had obtained in the trial court.

The case of Equitable Life Asssurance Society of United States v. Adams, 259 Ky. 726, 83 S. W. (2d) 461, 464, was one appealed from the same court and in which plaintiff therein sought to recover for the same kind of affliction producing his alleged total and permanent disability, as based upon the identical clause in the insurance contracts upon which plaintiff herein bases this action. The proof in the Adams Case was not furnished within the 12 months required in his policy stipulation. The same physicians appeared for plaintiff in that case who also appeared for plaintiff in this one, and their testimony in this case was in its essential features a repetition of that given by them in the Adams one. Also in that case, as well as in this one, they made similar statements in their proofs of loss with reference to other employees holding similar insurance contracts with defendant herein, and for which similar claims were made. But in the Adams Case, after an extensive review of all of our prior decisions, we held that the prescribed time for the furnishing of proof of one year from the commencement or inception of the insured's disability was reasonable and enforceable. Such conclusion, so reached therein, was thus stated: "The allegation of Adams' petition

and his testimony, without contradiction, show that he did not furnish to the Equitable proof of his disability within twelve months after its commencement, hence it was entitled to a directed verdict. Other questions are discussed in briefs, but, entertaining the views herein expressed, it is unnecessary to consider them.''

That case was followed by that of same appellant as here, Equitable Life Assurance of United States v. Daniels, from the same county and reported in 261 Ky. 351, 87 S. W. (2d) 960, and in which the same physicians established the alleged proof of loss. The only difference between that (Daniels) case and the Adams one is that the plaintiff therein became disabled from the contraction of pulmonary tuberculosis instead of heart affection; but, following the Adams opinion and others therein referred to, the judgment rendered therein in favor of Daniels was reversed by us because of his failure to furnish proof in accordance with the policy provision.

In the still later case of same appellant, Equitable Life Assurance Society of United States v. Elkins, decided by us on November 29, 1935, and reported in 261 Ky. 591, 88 S. W. (2d) 37, the same conclusion was approved and applied, and the judgment that had been rendered by the same court in favor of Elkins was reversed because of his failure to make proof as required by the policy contract. In that case also the testimony of the same physicians was relied on to establish plaintiff's claim and right to recovery. Curiously enough, it also appeared in that case that Elkins, a discharged employee of the same employer, discovered after his discharge that he had become afflicted with the same sort of heart trouble of which Skaggs complains in this case. Two inferences might be drawn from the developments of those cases with reference to conditions in that particular locality, and which are, that heart trouble is quite prevalent therein, and that the physician witnesses of the respective plaintiffs in the cases referred to are not only experts in detecting its existence, but also in fixing the time of its commencement long after that fact happened. Nevertheless, the instant case must be determined, not upon such peculiarities, but upon the question of whether or not plaintiff has complied with his contract so as to entitle him

540

to his asserted rights thereunder. Those cases expressly hold that the contract provision with reference to the giving of notice under the identical clause involved in this case was and is reasonable and enforceable, and when not complied with, and there is an absence of waiver or estopping conduct on the part of the insurer, the provisions must be enforced if relied on.

Many cases are collected in the opinions referred to that were rendered by us prior to the dates of the rendition of any of them to the same effect, and in which we held that substantial compliance with such provisions was all that was required; but without that much compliance the defense based thereon would be available to defendant. So much was expressly said in the Elkins opinion which also referred to the recently prior Adams one. Further comment would seem to be unnecessary. But we deem it not improper to state that the conclusions reached in the opinions referred to would appear to be sound and should be applied even without them, since parties have the right to insert any reasonable stipulation in their contracts which is not contrary to law, and likewise that they should be bound thereby, unless the one sought to be held liable thereon has either waived or estopped himself to rely upon it.

It therefore follows that the judgment appealed from was and is erroneous, and it is reversed, with directions to set it aside, and, if the evidence is substantially the same on another trial, should there be one, as it was on this one, defendant's motion for a peremptory instruction in its favor should be sustained. The trial court is therefore directed to proceed with the case consistent with this opinion.